IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> ZOLL LIFECOR CORPORATION, <br><br> Defendant. | Civil No. 12-1369 <br> Judge Nora Barry Fischer |

## Memorandum Order and Opinion

Now pending before the Court are Defendant, ZOLL LifeCor's ("ZOLL") Motion to Modify-in-Part and Adopt-in-Part the Special Master's Report and Recommendation on Claim Construction, (Docket No. 209), and Plaintiff, Koninklijke Philips's ("Philips") Motion to Adopt the Report and Recommendation, (Docket No. 211). ZOLL filed a brief in support of its motion, (Docket No. 210), and a brief in opposition to Philips's motion (Docket No. 233). Philips, in turn, filed a brief in opposition to ZOLL's motion. (Docket No. 234). ZOLL also filed a brief in reply to Philips's brief with leave of Court. (Docket No. 246). The Motions are now ripe for disposition.

Factual and Procedural History[1]

Philips brings this civil action against ZOLL for patent infringement under 35 U.S.C. § 271. The patents in suit are U.S. Patent Nos. 5,593,427; 5,607,454; 5,735,879; 5,749,904; 5,749,905; 5,803,927; 5,836,978, and 6,047,212 (the "Patents-in-Suit"). These patents are

---

[1] For more on this litigation saga's history, *see Koninklijke Philips, N.V. v. Zoll Medical Corporation*, No. 10-11041 (D. Mass. filed June 18, 2010); *Koninklijke Philips, N.V. v. Zoll Medical Corporation*, No. 12-12255 (D. Mass. filed Dec. 5, 2012).

1

directed at electrotherapy methods for defibrillators, allegedly including ZOLL's LifeVest wearable defibrillator. ZOLL denies that it infringes any claim of the Patents-in-Suit. ZOLL has also asserted affirmative defenses and counterclaims for non-infringement and invalidity. (Docket No. 24).

In light of the complex nature of the Patents-in-Suit, the Court referred this case to Special Master Gale R. Peterson, Esquire,[2] on February 24, 2014 for claim construction, upon the parties' joint proposal. (Docket No. 112). Following Mr. Peterson's appointment, the parties filed their opening briefs on claim construction, (Docket Nos. 119, 123), Plaintiff filed its Reply, (Docket No. 127), and Defendant filed its Sur-Reply, (Docket No. 135). The Technology Tutorial and Claim Construction Hearing were held on May 13–14, 2014, (Docket Nos. 138, 139), after which the parties filed their slide deck presentations, (Docket Nos. 141, 142, 143, 144, 145). The Court and her clerk were present throughout all of these proceedings and participated with questions to the parties. Both parties requested transcripts of that hearing. (Docket Nos. 192, 193). The hearing transcripts were filed of record on July 14, 2014. (Docket Nos. 192, 193). The parties also filed supplemental briefing concerning an alternative claim construction for several of the claim terms in dispute. (Docket Nos. 148, 149).

On June 16, 2014, the Special Master filed a Draft Report and Recommendation, (Docket No. 184), to which the parties responded with comments on July 8, 2014, (Docket Nos. 188, 189, 199, 200). Subsequently, the Special Master issued a Final Report and Recommendation ("Report and Recommendation"). (Docket No. 204). As noted, Plaintiffs filed a Motion to

---

[2] Mr. Peterson has more than 35 years of experience in intellectual property litigation, prosecution, licensing, and acquisition. He has served as an arbitrator or mediator in over 25 cases and as an expert witness in approximately 30. In addition to the instant case, Mr. Peterson has served as Special Master for Claim Construction in numerous others, including: *Panoe v. Microsoft Corp.*, No. 07-2973, 2013 WL 4048503 (E.D.N.Y.); *Best Med. Intern., Inc. v. Accuracy, Inc.*, No. 10-1043, 2013 WL 141543 (W.D.Pa. Jan. 11, 2013); and *Datascape, Inc. v. Kyocera Wireless Corp.*, No. 05-1651, 2008 WL 5736589 (N.D.Ga. Aug. 21, 2008).

Adopt-in-Full the Special Master's Report and Recommendation, (Docket No. 211), whereas Defendants filed a Motion to Modify-in-Part and Adopt-in-Part same, (Docket No. 209). Said motions are treated together below.

Legal Standard

A District Court reviews a Special Master's Report and Recommendation *de novo*. FED. R. CIV. P. 53(f).

Discussion

ZOLL objects to all but two of the Special Master's Recommended claim constructions.[3] (Docket Nos. 209, 210). ZOLL uses generally the same arguments it has presented throughout the claim construction process in this case. Philips has not filed any objections to the Report and Recommendation and urges the Court adopt it in its entirety. Given ZOLL's objections, a discussion of each disputed claim term follows.

    a. *"monitoring"*

The Special Master recommends that this term does not require construction. (Docket No. 204). Neither party objects to the Special Master's Recommendation. As such, the Court ADOPTS the Recommendation.

    b. *"electrical parameter"*

The Special Master recommends that the Court construe "electrical parameter" as "not exclud[ing] energy." (Docket No. 204 at p. 26). ZOLL objects to this negative limitation on the ground that it does not resolve the parties' dispute as to this term. (Docket No. 210 at p. 4). It

---

[3] Although ZOLL claims it objects to all recommendations save that regarding the preamble, there is no discussion in any filings regarding the currently-pending motions before the Court discussing "monitoring."

3

requests that the Court construe this term affirmatively as "voltage, current, or charge." (*Id.*). Philips, on the other hand, contends that the negative construction does resolve the parties' dispute, and that calculated values (*e.g.*, charge and energy) are consistent with the disclosure of at least some[4] of the patents. (Docket No. 234 at p. 3).

As the Special Master indicated, there is no dispute as to whether the "electrical parameter" comprises both voltage and current. (Docket No. 204 at p. 22). There is also no dispute as to whether the specifications of all Patents-in-Suit disclose that time is measured. Energy is a calculated value based on current, voltage, and time. Charge is similarly a calculated value. ZOLL contends the proper construction of "electrical parameter" should be limited to "voltage, current, or charge." (Docket No. 210 at p. 4). It argues that, because energy is not disclosed in any of the specifications, it should be excluded. (*Id.* at p. 5). It also argues that the Special Master's Recommendation is incorrect because "[t]he claims do not refer to 'calculating' a parameter from other measurements, but to 'monitoring' a particular 'patient-dependent electrical parameter.'" (*Id.*). This, however, misses the point. The fact that a value needs to be "calculated" before it is capable of being "monitored" does not negate the fact that it may be "monitored." This position is also inconsistent with ZOLL's own proposed construction, which includes charge, a calculated parameter. (Docket No. 210 at p. 4). Further, though the specifications do not explicitly state energy *is* monitored, nor do they rule out same, explicitly *or* implicitly. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc).

Aside from that, when discussing the types of information the controller processes, the specification prefaces its list with "such as." *See, e.g.*, '454 Patent at 6:8–9. ZOLL's proposed

---

[4] The eight Patents-in-Suit are separated into two groups, the "Parent Patents," consisting of the '427 patent, the '879 patent, the '905 patent, the '978 patent, and the '212 patent, and the "Continuation-in-Part" patents, consisting of the '454 patent and the '927 patent. The Continuation-in-Part patents' specifications contain information additional to that in the Parent Patents.

4

construction would read out these words entirely by limiting the meaning of this term to the three listed examples. This is improper. *See Phillips*, 415 F.3d at 1323. In fact, the specification later states that "patient-dependent electrical parameters *other than charge delivered* may be monitored and used to shape the waveform during discharge." '454 Patent at 11:15–17 (emphasis added).

ZOLL also suggests that, because "the specifications describe, as prior art, methods that rely on determining energy," the patented technology cannot, itself, use energy. (Docket No. 210). Philips counters that "[a]s the Special Master found, the 'prior art' discussions identified by Zoll were 'not 'distinguishing' prior art methods that relied on measuring energy delivered to a patient,' but instead addressed 'the 'patient variability problem.''" (Docket No. 234 at p. 4). The Court agrees with the Special Master's characterization of this discussion and does not see a need to further expound on the matter.

Finally, to the extent ZOLL argues that it was improper for Philips to rely on "new matter" added in the Continuation-in-Part patents, ZOLL's own proposed construction again runs counter to its own argument. ZOLL argues that the first time charge is mentioned is in the Continuation-in-Part patents, which constitutes new matter. However, by providing only one proposed construction, ZOLL does not contend that the Parent Patents should be construed differently than the Continuation-in-Part patents. As such, since ZOLL concedes that charge can be one of the "electrical parameters in the Parent Patents, despite its absence from the specification, this argument cannot prevail.

Based on the foregoing, ZOLL's objections are OVERRULED, and the Special Master's Recommendation is ADOPTED as that of the Court.

    c.   <u>"based on"/"as a function of"/"depends on"</u>

The Special Master recommends that the Court construe these terms as not being limited to "as a direct and immediate consequence of" or "as a direct and uninterrupted consequence of." (Docket No. 204 at p. 26). ZOLL objects to the negative construction as not resolving the parties' dispute. (Docket No. 210 at p. 4). Although ZOLL clearly does object to the Special Master's recommended construction, it does not actually present a proposed construction in its brief. (*Id.*) Similarly, Philips does not respond to this issue directly.

To that end, the Court has considered all of the arguments made by the parties regarding this limitation before the Special Master and agrees with his conclusion. ZOLL's objection is therefore OVERRULED and the Special Master's Recommendation is ADOPTED.

### d. "adjusting"

The Special Master recommends that the Court construe this term as meaning "'selecting or changing,' but that requires an intentional act, as opposed to 'a mere causal effect of another event.'" (Docket No. 204 at p. 45). ZOLL "objects only insofar that [the] Special Master did not further define the 'intentional act' to make clear that is must be 'to achieve a desired result.'" (Docket No. 210 at p. 2). ZOLL claims this omission "invit[es] the possibility of" undefined and indeterminate "later disputes." (*Id.*). Philips urges adopting the Special Master's Recommendation, arguing that ZOLL's additional proposed language, "to achieve a desired result" is not supported by any evidence. (Docket No. 234 at p. 1).

To make it clear, both parties agree that the common meaning of "adjusting" should apply, and neither contests the current Recommendation beyond the addition of ZOLL's proposed limitation. From this starting point, then, the question that remains is whether the common meaning of "adjusting" requires that the "intentional act" be "to achieve a desired result." ZOLL points to the same dictionary definitions upon which it relied before the Special

6

Master. (*Compare* Docket No. 210 at p. 3 *with* Docket No. 184 at p. 128 *and* Docket No. 204 at p. 40). The Special Master twice rejected this argument, finding that "adjusting" does not *per se* "connote[] or require[] doing something to achieve a certain result, particularly when, in context, the claim language does not specify a particular 'result.'" (Docket No. 204 at p. 49). The Court agrees; acknowledging that, while some definitions ZOLL presented do support the additional limitation, when read in context, the patent does not *require* the adjustment be undertaken "to achieve a certain result." Accordingly, ZOLL's objections are OVERRULED, and the Special Master's Recommendation is ADOPTED.

   e. *The preambles*

Neither party objects to the Special Master's Recommendation. As such, the Court ADOPTS the Recommendation that the preambles are limiting to all claims *except* claim 1 of the '927 patent.

   f. *"an electrical unit measured across the electrodes"*

The Special Master recommends that this term be construed as not being "limited to measuring voltage." (Docket No. 204 at p. 35). ZOLL, again faulting the Special Master's negative construction, "maintains that the term should be construed as a 'differential value across two electrodes.'" (Docket No. 210 at p. 9). Philips points to the specifications' disclosure that both voltage and current can be measured, as well as the doctrine of claim differentiation, pointing to dependent claims limiting the measured electrical unit to voltage.[5] (Docket No. 234).

"[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1315 (en banc) (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910

---

[5] Specifically, claim 4 of the '879 patent and claim 1 of the '427 patent recite "an electrical unit measured across the electrodes." Claim 9 of the '879 patent, which depends from claim 4, and claim 7 of the '427 patent, which depends from claim 1, further limit said electrical unit to "voltage."

7

(Fed. Cir. 2004)). Because ZOLL has not identified any "differential value" other than voltage, the Court agrees with the Special Master that ZOLL has not presented sufficient evidence to overcome that presumption. As such, ZOLL's objections are OVERRULED, and the Special Master's Recommendation is ADOPTED.

g. *"predetermined"*

The Special Master recommends that "predetermined" does not require construction. (Docket No. 204 at p. 31). ZOLL objects on the ground that construction is necessary to resolve the parties' dispute and that there is no basis for a conclusion that any value is determined after the initiation of a discharging cycle. (Docket No. 210 at p. 8). Philips counters that, while ZOLL argues that disputes remain unresolved, it does not identify any. (Docket No. 234 at p. 5). It also points to the Special Master's finding that claims 2 and 3 of the '427 patent include steps that occur "after the first discharging step" as evidence that the patents *do* disclose values determined after the initiation of a discharging cycle. (*Id.* (citing Docket No. 204 at p. 29)).

ZOLL, in presenting the same arguments here as before the Special Master still does not point to any convincing evidence within the Patents-in-Suit that requires that "predetermined" means "prior to the initiation of the shock delivery." The Court agrees with the Special Master that the plain meaning of "predetermined" is sufficient and believes jurors will be able to apply this meaning in the context of the individual claims. Accordingly, ZOLL's objections are OVERRULED, and the Special Master's Recommendation is ADOPTED.

h. *"tilt"*[6]

The Special Master recommends the Court construe "tilt" in claim 15 of the '454 patent "as being limited to the overall 'tilt' of the biphasic waveform, namely the formula recited in the

---

[6] As the briefing and Special Master Report and Recommendation describe in detail, "tilt" is a technical term of art, "meaning a measure, expressed as a percentage, of the difference between initial voltage and terminal voltage." (*See* Docket No. 204 at p. 50).

patent," and in claims 13 and 14 of the '879 patent "as not being limited to the 'tilt' of the entire two phases." (Docket No. 204 at p. 53). ZOLL objects on the ground that the Special Master did not give "adequate weight to the patentee's express definition of 'tilt.'" (Docket No. 210 at p. 11). Philips counters that the context of the claim language supports the Special Master's Recommendation. (Docket No. 234 at p. 6).

Initially, as the Special Master construed "tilt" consistent with ZOLL's proposal regarding claim 15 of the '454 patent, and Philips does not object, the Court ADOPTS this portion of the Special Master's Recommendation.

As to claims 13 and 14 of the '879 patent, the Special Master held that "whether 'tilt' refers to (1) the entire biphasic waveform, or (2) only a phase, depends on the actual claim language." (Docket No. 204 at p. 51). Despite the inclusion of the formula in the specification, ZOLL has consistently failed to point to evidence that the patentee clearly acted as its own lexicographer, redefining "tilt," to *exclusively* refer to the "tilt" of the entire biphasic waveform when one of ordinary skill in the art understands it can apply to only one phase of said waveform. Its arguments opposing the Special Master's Recommendation are similarly lacking.

To the extent ZOLL seeks to argue that, because "claim 14 recites the open-ended transition term of 'comprising,'" it "can include other steps," and that these "other steps" could include measuring "tilt" as something other than tilt across the full biphasic wave, the Court disagrees. As Philips points out, while "comprising" is inclusive, the inclusive nature cannot be used to warp the meaning of the claim. *See Smith & Nephew v. Ethicon, Inc.*, 276 F.3d 1304, 1315 (Fed. Cir. 2001); *Spectrum Int'l Inc. v. Sterilite Corp*, 164 F.3d 1372, 1380 (Fed. Cir. 1998) ("'Comprising' is not a weasel word with which to abrogate claim limitations.").

9

In light of the foregoing, ZOLL's objections are OVERRULED, and the Special Master's Recommendation is ADOPTED.

   i. *"approximately 20.3 ms or less"*

The Special Master recommends this Court conclude that it cannot rewrite "approximately 20.3 ms or less" to either of ZOLL's proposed constructions. (Docket No. 204 at p. 55). ZOLL argues that "the term 'approximately 20.3 ms or less' should be construed as '20.3 ms or less' because 'approximately' is a term of degree, and the specification provides no guidance as to how to ascertain its scope." (Docket No. 210 at p. 13). It alternatively suggests the term be construed as meaning "no greater than 20.3 ms, within the standard deviation of measurement for the timer." (*Id.*). Philips argues that "there is nothing in the claim itself that indicates the maximum time length is 20.3 ms." (Docket No. 234 at p. 6). In support, it points to an example used during prosecution where the actual time was, in fact, longer than 20.3 ms. (*Id.*).

The Special Master refused to recommend ZOLL's proposals on the ground that it is inappropriate for the Court to rewrite claim terms. (Docket No. 204 at p. 55). He went on to suggest that ZOLL's definiteness argument "is a question for another day." The Court agrees. "[C]ourts may not redraft claims, whether to make them operable or to sustain their validity." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004). The Court "construe[s] the claim as written," not as the accused infringer wishes it was written. *Cf. id.* Accordingly, ZOLL's objections are OVERRULED, and the Special Master's Recommendation is ADOPTED.

   j. *The "controller" terms*

The Special Master "recommends that the Court conclude that the 'controller' limitations do not constitute means-plus-function limitations governed by § 112(f)." (Docket No. 204 at p. 58). ZOLL objects on the ground that "the word 'controller,' by itself does not connote sufficient structure, since many types of controllers exist, and they are generic until programmed to perform a specific controlling function." (Docket No. 210 at p. 14 (citing *ITT Mfg. Enters., LLC v. Cellco P'ship*, 2011 WL 7121453. at *18 (D. Del. Dec. 29, 2011)[7]). Philips rests on its prior briefing on this matter, (Docket No. 234 at p. 7), which generally argued that, by not using the word "means," ZOLL must overcome the presumption that the term is not a means-plus-function term, and that ZOLL has not done same. (Docket No. 116 at p. 17 (citing *Inventio AG v. ThysenKrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1356 (Fed. Cir. 2011)).

Ultimately, the Court is not convinced that ZOLL has sufficiently rebutted the presumption that § 112(f) is not invoked absent use of the word "means." Accordingly, ZOLL's objections are OVERRULED, and the Special Master's Recommendation is ADOPTED.

**AND NOW, on this 23rd day of September, 2014,** after the foregoing *de novo*, consideration of both the draft Report and Recommendation as well as the thorough and well-reasoned Report and Recommendation of Special Master's Final Report and Recommendation on claim construction, (Docket No. [204]), Defendant, ZOLL LifeCor's Motion to Modify-in-Part and Adopt-in-Part the Report and Recommendation, (Docket No. [209]), Plaintiff, Koninklijke Philips's Motion to Adopt the Report and Recommendation, (Docket No. [211]), and the parties' associated briefing, (Docket Nos. [210], [233], [234], [246]), the Court

---

[7] The Court notes that the term construed in *ITT Mfg.* was, more fully, "controller means." To that end, the instant case is immediately distinguishable on the basis that the Patents-in-Suit do not use the word "means," and, thus, do not raise a presumption that the means-plus-function provision of § 112(f) apply. *See Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996).

11

HEREBY ADOPTS the Special Master's Recommended Claim Term Constructions, (Docket No. [204]), as set forth in a Claim Construction Order to follow.

Accordingly,

IT IS HEREBY ORDERED as follows:

1. ZOLL LifeCor's objections (Docket No. [210]), are OVERRULED;

2. ZOLL LifeCor's Motion to Adopt-in-Part and Modify-in-Part the Special Master's Final Report and Recommendation on Claim Construction, (Docket No. [209]), is GRANTED-IN-PART, to the extent it seeks to adopt the Special Master's Recommendation regarding the preambles, and is DENIED-IN-PART, in all other regards; and

3. Philips's Motion to Adopt Final Report and Recommendation on Claim Construction, (Docket No. [211]), is GRANTED.

An appropriate Claim Construction Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: September 23, 2014
cc/ecf: Special Master Gale R. Peterson
       All Counsel of Record